Filed 8/24/21  In re B.K. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re B.K., et al., Persons Coming Under the Juvenile Court Law. | B311119 |
| _____ | (Los Angeles County Super. Ct. No. 20CCJP06086) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| A.K., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Linda L. Sun, Judge.  Affirmed.

Vincent W. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Rachel Kleinberg, Deputy County Counsel, for Plaintiff and Respondent.

_____

A.K. (Mother) appeals from the juvenile court's dispositional orders concerning her daughters, B.K. and S.K.[1] She contends that the court erred in removing her children from her because the Los Angeles Department of Children and Family Services (DCFS) had not made reasonable efforts to prevent or eliminate the need for removal and that the court failed to state the facts upon which it based its removal decision. We reject these arguments and affirm the orders.

## FACTUAL AND PROCEDURAL SUMMARY

### A.   *Detention*

On November 11, 2020, Mother gave birth to twin girls, B.K. and S.K. The children tested positive for methamphetamines and Mother tested positive for "amphetamine/meth" and cannabinoids. According to a nurse, the positive tests indicated that Mother had used drugs within the preceding two days.

Mother, who was then 27 years old, informed a hospital physician that she had actively used drugs since she was 21 years old. At one point, she used cocaine daily. During the last two years she used methamphetamine and opioids. Although she stopped using drugs in August 2020 when she learned she was pregnant, she explained to the physician that a few days before

---

[1] In addition to appealing from orders made at a jurisdiction and disposition hearing on January 26, 2021, Mother's notice of appeal states that she is appealing from orders made at a relative placement hearing on March 9, 2021. Her opening brief on appeal does not include any argument challenging the March 9, 2021 orders. We therefore consider her appeal from those orders to be abandoned. (See *Title Guarantee & Tr. Co. v. Fraternal Finance Co.* (1934) 220 Cal. 362, 363; *In re Andrew M.* (2020) 46 Cal.App.5th 859, 864, fn. 3.)

giving birth she was around others who were smoking marijuana and methamphetamine.

An immediate response referral was made to DCFS. A social worker responded to the hospital the day after the children's births. Mother told the social worker that she had been using methamphetamine for about one and a half years before she found out she was pregnant, and then stopped. She said she does not feel that she needs to enter a drug rehabilitation program and that her newborn children are "her strength to stay clean." Mother also said that the children's father is incarcerated and she does not want him to have any involvement with the children.

A hospital nurse informed the social worker that the children were "doing fine" and could be released with Mother the following day. The social worker issued a "hospital hold" to prevent their release.

On November 16, 2020, DCFS filed a petition under Welfare and Institutions Code section 300, subdivision (b)(1),[2] concerning B.K. and S.K. DCFS alleged that Mother's substance abuse had placed, and continues to place, the children at risk of serious physical harm or illness.

In a detention report prepared two days after the twins' births, DCFS recommended that the children be taken into protective custody and detained "to ensure the newborns' safety and to protect the newborns from the endangering or detrimental conduct of [their] mother." The report stated that providing services to Mother had not been an option "[d]ue to the emergent nature of the twins being born positive for methamphetamine."

---

[2] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

3

A detention hearing was held on November 19, 2020. Mother's counsel examined the social worker, who testified that she had asked Mother if she wanted services, and that Mother responded that she did not need any because the "children were her rehab." The social worker also stated that she denied Mother services prior to the detention hearing because Mother had denied her recent drug use.

Mother's counsel argued that the evidence was insufficient to support a finding that there were no reasonable services available that would have eliminated the need to remove the children from Mother's custody. The court rejected the argument and ordered the children be detained and placed in DCFS's custody. It further ordered DCFS to provide Mother with referrals for parenting and substance abuse programs and drug testing.

On November 22, 2020, Mother entered an inpatient drug treatment program.

### B. *Jurisdiction and Disposition*

In January 2021, DCFS filed a jurisdiction/disposition report. DCFS reported that, according to Mother, four days before the children were born, Mother "had a slip up" and used methamphetamine. She explained that she "was 'just around the wrong person and had a weak moment.'" Prior to that instance, Mother stated, she had been sober for four and a half to five months. Although she acknowledged that her children had methamphetamine in their systems at birth, she told the social worker that "'they had absolutely no withdrawals.'"

Mother also told the social worker that she had used cocaine only once, two or three years earlier, and that she had used methamphetamine between five and seven times. She admitted using marijuana recreationally and tried OxyContin in March or

April 2020.  She explained that she used drugs because of boredom, and told the social worker: " 'With two kids, I definitely won't be bored.  My kids would be my rehab.  I can't wait to be consumed by them.  I would never endanger them.' "  She added that "she knows right from wrong and is doing what she has to do."

The social worker also reported on her contacts with Mother's substance abuse counselor, the children's foster mother, the children's maternal grandfather, and the maternal aunt.  The substance abuse counselor told the social worker that Mother "is going good so far" and "actively participating" in classes and counseling relating to substance abuse and parenting.  Mother consistently tested negative for drugs.

The maternal grandfather told the social worker that Mother has " 'made some poor choices,' " but that she is " 'working on correcting these things.' "  The children's foster mother reported that visits via video calls between Mother and the children have gone well; Mother seems "motivated" and is always happy to see and talk to the infants.

The maternal aunt told the social worker that Mother had been using marijuana since she was a teenager and using methamphetamine for the last two or three years.  She was hopeful, however, because Mother is getting help and the rest of her family is willing to help and support her.

According to the social worker, "[M]other is still struggling with the acceptance of her substance abuse and appears to be minimizing her addiction and the detrimental impact it had on her children, as she had exercised poor judgment in continuing use despite being aware of the already high-risk pregnancy." The social worker acknowledged that Mother is participating in a substance abuse program, but concluded that "releasing the children back to her care is premature at this time given

her history and the vulnerable age of the newborns." DCFS recommended, among other actions, that the court declare the children to be dependents of the court, find that reasonable efforts were made to prevent or eliminate the need for removal, and order the children placed in DCFS custody.

The combined jurisdiction and disposition hearing took place on January 26, 2021. DCFS submitted on the detention report and the jurisdiction and disposition report, and counsel for the children requested that the court sustain the allegations against Mother.

During the hearing, Mother's counsel questioned a social worker if she believed that Mother "is a danger to her children as you sit there today," and the social worker responded, "As today [*sic*], no." When asked about the possibility of allowing the children to live with Mother at her inpatient facility, the social worker testified that she believed that would be "a little premature"; Mother has had "years of substance abuse," she explained, and "has been in treatment for about almost two months" where she is "supervised around the clock." The social worker said she was concerned because Mother had used drugs so close to the end of her pregnancy and "would like for her to be able to demonstrate that she will be able to apply the things that she's learning in her treatment program when she is not constantly supervised."

The maternal aunt testified that she and Mother lived in the same house as children until Mother was 12 years old. She stated that she has never seen Mother use, or be under the influence of, drugs.

Mother introduced a letter from a social worker at Mother's inpatient substance abuse facility. According to the letter, Mother has been diagnosed with "mild methamphetamine use disorder" and "mild cannabis use disorder." She also has "various mild to

6

moderate mental health symptoms." The social worker stated that Mother is compliant with her treatment, attends all sessions, "and displays sincere and genuine insight and concern into her past and present situation." Mother has decided to "stay in residential treatment for five months," then apply to enter a sober living house, where she would stay for "six months or more, depending on clinical evaluation and recommendation."[3]

Mother's counsel argued that DCFS failed to prove by clear and convincing evidence that the children would be exposed to a substantial risk of serious physical harm or illness if they were released to Mother's care. Counsel asserted that Mother does not pose such a risk because she has been in a rehabilitation program for approximately 66 days and is "testing clean." Counsel also requested that the court place the children with Mother in her inpatient facility and order that the children may not leave the facility without the social worker's permission.

DCFS argued that Mother has not fully acknowledged the danger in which she put the children by using drugs so late in her pregnancy and continues to minimize the risk of harm to the children from her drug use.

The court sustained each of the allegations in the petition and declared the children to be dependents of the juvenile court under section 300, subdivision (b). The court found that placing the children with Mother would be detrimental to the safety, protection, or physical or emotional well-being of the children and that DCFS had made reasonable efforts to prevent removal, but there are no services available to prevent further detention. The court relied in

---

[3] In response to the court's inquiry, Mother's counsel stated that Mother's program "has another two months," and that she is "planning on doing aftercare there, sober living there, so she'll be there for several months more."

part on Mother's failure to accept full responsibility for her drug use and her inconsistent statements about her history of drug use. The court ordered DCFS to provide family reunification services to Mother and the children.

On March 9, 2021, the court held a hearing pursuant to section 361.3, at which it agreed with DCFS and the children's counsel that placement with the maternal aunt was not appropriate. Mother's counsel sought to raise the issue of allowing the children to be placed with Mother at her inpatient treatment facility, but the court explained that the only issue presented at that hearing was whether the children would be placed with the maternal aunt. The court noted that counsel had also raised the possibility of placement at Mother's treatment facility during his argument at the disposition hearing, but that Mother had offered no evidence to support such a placement. The court did, however, direct DCFS to look into the possibility of placing the children with Mother at her treatment facility and to report to the court on that possibility in its next progress report.

Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends that the court erred by removing the children from her custody because there was no substantial evidence that DCFS had made reasonable efforts to prevent or eliminate removal. She further argues that the court failed to make required findings regarding such efforts. We disagree.

Prior to a disposition hearing, if DCFS recommends removal of the children from the parent, its report to the court must include a "discussion of the reasonable efforts made to prevent or eliminate removal." (Cal. Rules of Court, rule 5.690(a)(B)(i).) Under section 361, subdivision (c), the court may not remove a

8

minor from a parent's physical custody unless it makes one of five specified findings by clear and convincing evidence.  Relevant here is the finding that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (§ 361, subd. (c)(1); see also *id.*, subd. (d).)  The court must "state the facts on which the decision to remove the minor is based."  (§ 361, subd. (e).)

We will affirm the court's removal order if it is supported by substantial evidence.  (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)  Because the trial court must make the required finding by clear and convincing evidence, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995−996.)  In making this assessment, we "must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996; see *In re V.L.*, *supra*, 54 Cal.App.5th at p. 154 [the standard of review described in *Conservatorship of O.B.* applies to removal findings under section 361, subd. (c)].)  "The burden is on the [appellant] to show that the evidence is insufficient to support the juvenile court's findings." (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.)

Mother's argument that DCFS failed to include in its jurisdiction/disposition hearing report the required discussion of the reasonable efforts made to prevent or eliminate removal was

9

forfeited by failing to object on this ground below.  (See *In re T.G.* (2015) 242 Cal.App.4th 976, 984.)  Even if the issue is not forfeited, we reject it on the merits.

At the time of the jurisdiction/disposition hearing, Mother was in the midst of an inpatient substance abuse treatment program to which she was committed to completing.  The only arguably reasonable means that could have been employed to keep the children with Mother is to have the children live with Mother in the treatment facility.  In its jurisdiction/disposition report, DCFS rejected returning the children to Mother's care because of Mother's history of substance abuse, including her use within weeks of her gestational due date, and her denial of responsibility for endangering the children.  DCFS further stated that, the children "are of tender age" and "particularly vulnerable to abuse or neglect."  Although the report did not expressly address the possibility of returning the children to Mother *at her treatment facility*, the discussion indicates that returning the children to Mother would place the children in substantial danger no matter where Mother was living.

The report further states that the social worker, in connection with her "[r]easonable [e]fforts" obligations, consulted "with collaterals including service[ ] providers."  Although the report did not specify that Mother's treatment facility was among the referenced "collaterals," the social worker testified at the jurisdiction/disposition hearing that she talked with someone at the facility.  When asked about the possibility of placing the children with Mother there, the social worker explained that she rejected it because it was "a little premature" in light of Mother's "years of substance abuse."  Although the report could have been more explicit and provided greater detail as to the social worker's investigation into the possibility of returning the children to Mother

10

at the treatment facility, it is sufficient to satisfy the requirements of California Rules of Court, rule 5.690(a)(1)(B)(i); and, if it was not, any error was harmless in light of the social worker's clarifying testimony.

Mother also failed to raise below the arguments she asserts on appeal that the court failed to consider placing the children with Mother as a "less restrictive alternative" and failed to state the facts supporting the finding that removal was necessary to protect the children. Any deficiency in these matters "could have been easily cured, if raised in a timely fashion" and the "absence of a legally effective objection" forfeits the issue on appeal. (*In re E.A.* (2012) 209 Cal.App.4th 787, 791.)

We also reject Mother's argument on the merits. The court stated that it had "read and considered all the evidence admitted in this case, the testimony of the witnesses, and the arguments presented by counsel." Such evidence, testimony, and arguments encompassed the issue of placing the children with Mother.

As for stating the facts supporting the removal finding, the court pointed to the evidence of the children's "tender age," Mother's lengthy history of drug abuse, and her dangerous prenatal drug use. Considering such evidence, the court reasonably found that returning the children to her custody barely two months into her initial treatment program was not a reasonable means of protecting the children. (See *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["[i]t is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"].)

For all the foregoing reasons, we reject Mother's arguments and affirm the court's orders.

11

## DISPOSITION

The orders appealed from are affirmed.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.