Filed 11/1/21  K.B. v. Superior Court CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| K.B.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Real Party in Interest. | B313693<br><br>(Los Angeles County Super. Ct. No. 18CCJP00258A–C) |

ORIGINAL PROCEEDING; petition for extraordinary writ. Superior Court of Los Angeles County, Tamara E. Hall, Judge. Petition denied.

Neale B. Gold for Petitioner.

No appearance for Respondent.

Office of the County Counsel, Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Sally Son, Deputy County Counsel for Real Party in Interest.

## I. INTRODUCTION

K.B. (mother)[1] has filed a petition for extraordinary relief, arguing that the juvenile court violated her due process rights by bypassing reunification services for her one-year-old child, Kristopher, in the absence of a bypass recommendation by the Department of Children and Family Services (the Department) or any notice that a bypass provision might be invoked. Even if the decision was not a violation of her due process rights, she further argues, it was nonetheless not supported by substantial evidence. Finally, she argues the court relied on a legally inapplicable provision as the basis for its order denying reunification services as to seven-year old Ka. and six-year old Ke. We deny the petition.

## II. BACKGROUND

A.     *Initial Jurisdiction over Ka. and Ke.*

On March 13, 2018, the juvenile court sustained an amended petition which alleged that the parents' domestic violence and alcohol abuse endangered Ka. and Ke.'s safety. The

---

[1]     The children's father, K.C., is not a party to this writ proceeding.

court declared Ka. and Ke. dependents, removed them from parental custody, and ordered them suitably placed. The court ordered the Department to provide family reunification services to the children and parents and ordered that mother participate in a full drug program, weekly drug testing, a 12-step program, a domestic violence program, and individual counseling. The Department placed Ka. and Ke. with maternal grandparents.

Over the next 18 months, the parents visited with the children regularly and made progress with their case plans. At the 18-month review hearing, conducted on July 16, 2019, the juvenile court ordered the children returned to father's custody, while mother's visitation remained monitored.

In January 2020, just seven days after mother gave birth to Kristopher, the juvenile court permitted mother to return to the home, ordered Ka. and Ke. returned to the home of parents, and continued to maintain jurisdiction.

By late March 2020, mother's domestic violence course was suspended due to the COVID-19 pandemic. In June 2020, both parents admitted to a social worker that they were feeling "'stressed and overwhelmed'" because of the pandemic and because they had no options for taking the children out of the home. By September 17, 2020, maternal grandmother reported that "'father and mother are not good together'" and are in constant "'battles'" with one another. Both parents admitted to smoking marijuana again.

Father reported an altercation with mother during which father tried to prevent mother from taking the children to maternal grandmother's house and paternal great-grandfather had to intervene. Mother eventually took the children to maternal grandmother's home.

The social worker then interviewed Ka., who stated that mother and father "'fight a lot.'" When asked whether he saw them hit each other, he said, "'no just yell.'" The social worker asked whether he felt safe going home and living with father and mother. Ka. hesitated and said, "'I like it here'" at maternal grandmother's house. Ke., too, said, "'I want to stay here with my grandma.'"

When a social worker met with mother again on October 9, 2020, mother expressed frustration at the Department's focus on her failure to complete court-ordered programs. She asked, "'[W]hat difference would it make now. We have already separated and I don't plan to go back.'"

On November 10, 2020, the juvenile court authorized the children's detention from the parents, and they were again placed with maternal grandmother.

B. *Jurisdiction Over Kristopher*

On November 13, 2020, the Department filed a Welfare and Institutions Code[2] section 300 petition alleging that Kristopher was endangered by the parents' history of domestic violence and substance abuse. It also filed a supplemental petition pursuant to section 387 on behalf of Ka. and Ke., alleging the children were endangered by mother's failure to comply with her case plan. On November 18 and 19, 2020, the juvenile court detained all three children from mother, ordered the children released to father, and limited mother to monitored visits.

---

[2]     Further statutory references are to the Welfare and Institutions Code.

When interviewed on December 20, 2020, mother said the family was doing well when she first returned to the home in January 2020 but during the pandemic, things went back to "'the old routine.'" Although there was no more physical violence, father engaged in other forms of domestic violence, like ripping mother's clothes, calling her names, and withholding money from mother and the children.

Of 74 drug tests scheduled between June 2019 and December 2020, mother "no showed" to all but eight tests. Mother acknowledged she stopped drug testing because she knew she would test positive for marijuana.

At the January 19, 2021, hearing on the section 300 and 387 petitions, the juvenile court sustained the petitions, ordered the children removed from mother and placed with father, and ordered monitored visitation for mother. Mother was provided enhancement and reunification services, and ordered to complete a 12-step program, individual counseling, a domestic violence program, and drug testing.

C.    *Continued Domestic Violence and Failure to Drug Test*

Three months later, on March 12, 2021, the Department received a referral alleging that father stabbed mother in the knee with a knife. A week later, he kicked her in the injured knee and then, a few hours later, strangled her until she passed out.

The Department again detained the children. On March 16, 2021, it filed a section 342 petition alleging that the children were endangered by the parents' recent domestic violence altercations. The Department also filed a section 387

5

petition alleging that father allowed mother in the home in violation of the juvenile court's orders. On March 19, 2021, the juvenile court ordered the children detained and the parents' visits to be monitored.

On April 21, 2021, mother confirmed to a social worker that father stabbed her knee with a knife and admitted she and father "'sat outside of the emergency room . . . and made a story of what to tell them [because she] didn't want the kids taken away.'" On March 11, 2021, they argued and father hit her, causing her to fall. Father then stepped on her knee and kicked her "'all over.'" He then grabbed her head and started dragging her while choking and strangling her, saying "'he should have just finished [her].'" The last thing she remembered was father putting her in a headlock. When she awoke, mother was outside and paternal great-grandmother was screaming because she thought father had killed mother. During this incident, Kristopher was in the back house with paternal great-grandmother, while Ka. and Ke. were at paternal grandmother's home.

Paternal great-grandmother reported that she was in the back room with Kristopher when she saw mother on the floor. She went into the living room and saw father dragging mother out toward the front door. Mother seemed unconscious and paternal great-grandmother thought father had killed her. Paternal great-grandmother did not think mother seemed intoxicated. Paternal great-grandmother ran for the phone, but father ran towards her and scuffled with her for the phone, injuring her lip.

Mother admitted to the social worker that she was living with father at the time of the most recent domestic violence incident, even though she knew that she "'wasn't supposed to be

6

there.'" She added that while father appeared in court on January 19, 2021, she hid in the closet, and, that when a social worker would visit the home, mother would hide in the back with paternal great-grandmother.

Mother reported she was participating in individual counseling, AA meetings, and a domestic violence support group. From January 19, 2021, to April 2021, mother "no showed" to all 13 of her scheduled drug tests. In the same time period, father "no showed" to all six of his scheduled drug tests. He thought the drug testing "'was pretty much lame'" and added that he was "'tired of explaining to people and not being able to do what [he] want[s].'"

In its jurisdiction/disposition report, filed April 30, 2021, the Department recommended the court order family reunification services to mother as to Kristopher. As to the two older children, however, the Department noted that the parents had received over 18 months of reunification services and recommended that no further services be provided.

On May 11, 2021, the Department filed a last minute information, reporting that on April 23, 2021, mother tested positive for marijuana and on April 30, 2021, she was a "no show" for a drug test.

D.    *May 13, 2021, Hearing*

At the May 13, 2021, hearing, the Department and children's counsel agreed the section 387 and 342 petitions should be sustained. Children's counsel, however, advocated for reunification services as to all three children. Counsel believed

7

all three were "very much bonded to their parents" and felt there was good cause to keep the children on the same track.

After hearing argument, the juvenile court sustained the section 387 and 342 petitions. It then observed that "[i]t's interesting that visitation orders are being . . . requested. We will talk about that because based on . . . mother['s] and father's willful disregard of court orders, and willful disregard of the well-being of their children, it's pretty close and pretty clear that they are a detriment to the well-being of their children. It may not be in the best interest of the children to have any visitations with either mother nor father. So we will discuss that in disposition."

At that point, counsel for the Department argued: "I am asking that the court not order family reunification services for either mother or . . . father. They have exhausted the period to reunify with the [children]. So as to . . . mother and father for [Ka. and Ke.], they had already received 18 months of reunification services. There was a [section 366].22 hearing for [Ka. and Ke.] on July [16], 2019. Should the court order [family reunification] services, I would ask that be as proposed in the case plan provided."[3]

Mother's counsel requested that "the court . . . exercise its discretion in granting family reunification for all the children . . . . The children are very bonded to their mother . . . . [¶] If the court is not inclined to grant reunification, mother will at least ask for the monitored visits as there has been no direct harm to the children."

---

[3] Although the Department interprets this statement as requesting that reunification services be denied only for Ka. and Ke., counsel did not make any different or separate argument regarding Kristopher.

Following further argument by the parties, the juvenile court recited the history of this case and then found: "These parents are a risk, in and of themselves, to these children. There is no order of family reunification services that this court can grant today that the parents have not already been given, that they have partially complied, a little bit complied, but the lessons in what they were supposed to learn have gone in one ear and out the other. Meanwhile, these children are getting older and their safety is being jeopardized by the direct conduct of . . . mother and . . . father flipping their thumbs at the court orders to the point where it has escalated to a criminal matter, to the point where . . . father has placed his hands around . . . mother's neck . . . . There are no services that this family—that this court can order that this family has [*sic*] already been given that will help this family. [¶] It's for those reasons that the court is granting no family reunification services for mother or father." The court specified that it was "not following the recommendation of the Department. The court is not granting family reunification services for this family."

The court took a brief recess. Then, it stated that it was making its order pursuant to section 361.5, subdivision (b)(10) as to Ka. and Ke., and pursuant to section 361.5, subdivision (c)(2) as to Kristopher. The Department suggested that the order should be based on the fact that the parents had run out of time to reunify with Ka. and Ke., and on section 361.5, subdivision (b)(10) and (c)(2) as to Kristopher. The court then granted the parents monitored visitation and scheduled a section 366.26 hearing.

9

At no point during the proceedings did mother's counsel request a continuance or object that the court's decision to apply the bypass provision denied her of due process.

Mother filed a notice of appeal which, pursuant to *In re A.R.* (2021) 11 Cal.5th 234, we deemed to be a notice of intent to file a petition for extraordinary relief. We now deny the petition.

## III. DISCUSSION

A. *Kristopher*

"Generally, the juvenile court is required to provide reunification services to a child and the child's parents when a child is removed from parental custody under the dependency laws. (§ 361.5, subd. (a).)." (*In re I.A.* (2019) 40 Cal.App.5th 19, 23.) Nonetheless, the statutory scheme sets forth certain situations where reunification services may be "bypassed" because "the delay attributable to the provision of reunification services would be more detrimental to the minor than discounting the competing goal of family preservation." (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120.)

One such "bypass" provision applies where "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and . . . this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian." (§ 361.5, subd. (b)(10).)

10

It is the Department's burden to prove, by clear and convincing evidence, that one of the provisions of section 361.5, subdivision (b) applies. (§ 361.5, subd. (b).) Once it does so, "'""the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]'" [Citation.]' [Citations.] Thus, if the juvenile court finds a provision of section 361.5, subdivision (b), applies, the court 'shall not order reunification for [the] parent . . . unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child.' (§ 361.5, subd. (c)(2).) 'The burden is on the parent to . . . show that reunification would serve the best interests of the child.' [Citations.]" (*In re I.A., supra*, 40 Cal.App.5th at p. 24.)

We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96.) In doing so, we consider the evidence in the light most favorable to the trial court's findings. (*In re T.G.* (2015) 242 Cal.App.4th 976, 987.)

### 1. Due Process

Mother argues the juvenile court deprived her of due process by bypassing reunification services pursuant to section 361.5, subdivisions (b)(10) and (c)(2) when mother was not on notice that services might be bypassed. Mother, however, did not raise this argument before the juvenile court. "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation, fn. omitted.] The purpose of this rule is to encourage

11

parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule. [Citations.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

"A defect in notice . . . is a most serious issue, potentially jeopardizing the integrity of the entire judicial process. However, when a parent had the opportunity to present that issue to the juvenile court and failed to do so, appellate courts routinely refuse to exercise their limited discretion to consider the matter on appeal. This is precisely because defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court." (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754; see also *In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1152 [finding the father waived issue of improper notice of section 366.26 hearing by failing to raise it below].)

Here, mother and her counsel were both present when the juvenile court, upon sustaining the section 342 and 387 petitions, stated its view that "[i]t may not be in the best interest of the children to have any visitation with either mother nor father." The court then gave the parties an opportunity to argue the disposition. The Department asked the court not to order reunification services for either parent. Through counsel, mother asked the court to grant reunification services for all three children, and added that if the court were not so inclined, then "mother will at least ask for the monitored visits as there has been no direct harm to the children." After the court announced its decision, the Department requested that the court deny services under different statutory authority. At no point did mother argue she did not have notice that reunification services

12

might be bypassed as to Kristopher or that her due process rights were being violated. Nor did she request a continuance upon learning that reunification services might be bypassed. Accordingly, she has forfeited her argument on review.

      2.     <u>Substantial Evidence</u>

Even if the juvenile court's order did not violate her due process rights, mother argues, it still should be reversed because it was not supported by substantial evidence. We disagree.

"The concept of a child's best interest 'is an elusive guideline that belies rigid definition. Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult.' [Citation.]" (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66.) "In determining the children's best interests, the 'court should consider "a parent's current efforts and fitness as well as the parent's history"; "[t]he gravity of the problem that led to the dependency"; the strength of the bonds between the child and the parent and between the child and the caretaker; and "the child's need for stability and continuity."' (*In re William B.* (2008) 163 Cal.App.4th 1220, 1228 . . . .) '[A]t least part of the best interest analysis must be a finding that further reunification services have a likelihood of success. In other words, there must be some "reasonable basis to conclude" that reunification is possible before services are offered to a parent who need not be provided them.' (*Id.* at pp. 1228–1229.)" (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1164.)

The juvenile court's determination that further reunification services would be fruitless is amply supported by the record. Mother "no showed" to 66 of 74 scheduled drug tests

between June 2019 and December 2020. Even after the children were detained again, she continued to "no show" for drug tests, failing to appear for 13 more drug tests between January 19, 2021, and April 2021. In April 2021, she was scheduled for two more drug tests. She tested positive for marijuana in the first and "no showed" for the second. This extensive track record of noncompliance with her case plan supports the court's conclusion that further services would not be successful.

Further, mother demonstrated that she was unable to extricate herself from domestic violence. In spite of the individual counseling and domestic violence services she received during an extended reunification period, and despite having told the Department that she was separated from father, she nonetheless returned to father's home and lived there regularly. When father stabbed her in the knee, she and father made up a story about how the injury occurred while sitting together outside the emergency room. Even then, she continued to live with father, including when father stepped on her injured knee, kicked her all over, and strangled her to unconsciousness. Mother later admitted that she lived at home even when she knew she was not supposed to be there. She hid in the closet while father appeared in court, presumably by video. If she knew a social worker would visit, she would hide in the back house with paternal great-grandmother. Mother's repeated efforts to thwart the effectiveness of arrangements designed to protect her and her children, and her inability to leave father, supports the juvenile court's finding that further reunification services would be futile and mother would not successfully reunify with Kristopher. If reunification is unlikely to be successful, then the child's interest

14

in stability and continuity is best served by proceeding to permanency planning rather than engaging in protracted and ultimately fruitless reunification efforts. (See *In re William B., supra*, 163 Cal.App.4th at p. 1229 ["The best interests of the child are not served by merely postponing his chance for stability and continuity and subjecting him to another failed placement with the parent"].)

We acknowledge the evidence that all three children are bonded to mother. Nonetheless, "[t]he boys' bonds with the mother cannot be the sole basis for a best interest finding." (*In re William B., supra*, 163 Cal.App.4th at p. 1229.) Nor are the children's bonds with mother the only bond relevant to the juvenile court's analysis. The court must also consider and weigh the children's bonds with their caretaker and with one another. (See *In re Ethan N., supra*, 122 Cal.App.4th at p. 67.) When interviewed in September 2020, both Ka. and Ke. said they wanted to live with maternal grandmother. And, as the children's counsel pointed out, the siblings' bonds with one another favored keeping all three children on the same track.

We are persuaded that substantial evidence supports the juvenile court's determination that mother did not demonstrate, by clear and convincing evidence, that reunification services would be in Kristopher's best interests.

B.    *Ka. and Ke.*

Mother argues the juvenile court erred in relying upon section 361.5, subdivision (c)(2) to bypass reunification services as to Ka. and Ke. Having reviewed the transcript of the hearing, we do not believe the court's final order was based on section

15

361.5, subdivision (c)(2).  Rather, upon prompting by counsel for the Department, the court agreed that its order as to Ka. and Ke. should be "based on the fact that the parents have simply r[u]n out of time to reunify with the children."  When counsel for the Department went on to suggest the court base its order as to Kristopher on section 361.5, subdivision (b)(10), the court thanked counsel and said, "and [section 361.5, subdivision (]c[)](2)."  In other words, the court's reliance on section 361.5, subdivision (c)(2) was limited to its order bypassing reunification services for Kristopher.

As to Ka. and Ke., mother does not deny she received over 18 months of reunification services.  She contends the juvenile court should have exercised its discretion to award reunification services for Ka. and Ke. pursuant to section 352 based on children's counsel's recommendation that the three children be kept on the same track as they are all "very much bonded to their parents."  We reject this argument, as we affirm the court's order bypassing reunification services for Kristopher.

## IV.  DISPOSITION

The petition for extraordinary writ is denied.

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.