Filed 8/26/21  In re S.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076230 |
| Plaintiff and Respondent, | (Super.Ct.No. J286053) |
| v. | OPINION |
| J.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle d. Blakemore, County Counsel, Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant J.M. (Father) appeals after the denial of reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(10) for S.M. (Minor)[1], [2] Father and M.M. (Mother) had three other children that were taken from them in Los Angeles County in 2007. The juvenile court refused to grant Father reunification services based on the prior failure to reunify with Minor's siblings and failing to make reasonable efforts to correct the problems, which lead to the prior dependency of Minor's siblings.

Father claims on appeal, that as the presumed father, the juvenile court erred by denying him reunification services based on section 361.5, subdivision (b)(10). Further, it was in the best interests of Minor that Father be given reunification services.

## FACTUAL AND PROCEDURAL HISTORY

A. DETENTION OF S.M. IN 2020

On July 6, 2020, San Bernardino County Children and Family Services (Department) received an immediate response referral alleging that Minor, who was five years old, was molested by maternal step-grandfather, J.G. A Fontana Sheriff's Deputy responded to the location where Minor was living to investigate the allegation. The sheriff's deputy advised the Department that the house where Minor was living was filthy. It was filled with cockroaches and there was feces on the walls. The refrigerator had outdated food and cockroaches in it. A social worker arrived at the location and

---

[1] Mother is not a party to the appeal.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

interviewed maternal grandmother, O.G. Minor's two adult siblings J.M. and K.M., and 17-year-old sister A.M. (collectively, siblings) were present and advised the social worker they had not witnessed any inappropriate behavior from J.G. Mother reported seeing J.G. in the bathroom with Minor. They were both naked from the waist down, and she heard J.G. say to Minor, "open your mouth so I can put it in." Mother believed J.G. was talking about J.G.'s penis. Mother confronted J.G. and he denied any wrongdoing.

Mother also reported that J.G. had tried to force himself on her and touched her breast. Mother wanted Minor examined as he had a rash in his rectum area, which had been present for one year. Minor was examined at the emergency room and determined to have poor hygiene. His rash was likely due to him still wearing diapers even though he was five years old. A further forensic exam would be conducted.

A follow-up visit at the home one week later was done by a social worker. Mother had moved out of the home. O.G. reported that Mother had not been taking her psychotropic medication to treat her schizophrenia. J.G. was interviewed and reported he had been going to the bathroom when Minor entered the bathroom. J.G. immediately pulled up his pants. He denied any inappropriate sexual conduct; Mother had made a false allegation. O.G. and J.G. (collectively, maternal grandparents [MGP]) wanted legal guardianship of Minor.

Mother wanted Minor removed from the home. Mother initially reported that Father was the father of Minor and she did not know his whereabouts. She admitted that she and Father had a history of domestic violence. She later stated M.H. was Minor's father. M.H. was homeless and had untreated mental health issues. Minor was detained

3

in foster care on July 22, 2020. The whereabouts of Father and M.H. were unknown. The detention report stated that Father had been named the presumed father of Minor in a prior case on September 14, 2015.

Mother and Father (collectively, parents) had a history with the Los Angeles County Department of Children and Family Services. On April 26, 2007, siblings were removed from parents' care due to concerns regarding Mother's mental health, substance abuse and domestic violence. On July 30, 2007, siblings were adjudged dependent children and siblings were placed in a legal guardianship with MGP. Further, there was a prior case involving Minor. A family maintenance plan was established for Minor with Mother, M.H. and Father due to Mother's mental health. The family maintenance plan was dismissed on April 14, 2016.

On July 24, 2020, the Department filed a section 300 petition against Mother, Father, as an alleged father, and M.H., as an alleged father. An initial detention hearing was held on July 27, 2020. Father was present. The juvenile court found a prima facie case was established for the detention of Minor in a foster home.

An amended section 300 petition was filed on August 14, 2020. It was alleged pursuant to section 300, subdivision (b), failure to protect, that (1) Mother had been diagnosed with schizophrenia, which impaired her ability to provide adequate care, supervision and protection for Minor; (2) Mother had a history of making inappropriate caregiving arrangements, which was evidenced by her leaving Minor in the care of J.G. about whom she had raised concerns of sexual abuse of herself and Minor; (3) Minor was left without any provisions for care in that the whereabouts of alleged father M.H. were

4

unknown; (4) Father left Minor without any provisions for care and did not provide a suitable plan for his ongoing care and support; (5) Mother had a history of substance abuse that negatively impacted Minor; (6) M.H. had a history of substance abuse that had not been addressed; (7) M.H. had mental health issues that had not been addressed; (8) While in the care and custody of Mother, Minor was sexually abused by J.G.; and (9) Father knew or reasonably should have known that Mother had untreated schizophrenia, which placed Minor at risk of physical and emotional harm. It was further alleged under section 300, subdivision (g), that (10) M.H.'s whereabouts were unknown, and (11) Father had left Minor with no provision for support.

It was additionally alleged pursuant to section 300, subdivisions (j) that (12) and (13) in 2007, siblings were adjudged dependent children pursuant to section 300, subdivision (b), in Los Angeles County due to Mother's mental health, and domestic violence. Siblings were removed from the custody of Parents. It was further alleged under subdivisions (j)(14) and (j)(15) that on August 14, 2015, Minor was detained from Mother and M.H. due to concerns about Mother's mental health. On April 14, 2016, family maintenance was dismissed and Minor remained in the home of Mother.

An amended detention report provided additional information that Minor had been placed with V.R., his maternal aunt (Aunt). On July 24, 2020, Father had contacted the Department. He clamed he was actively involved in Minor's life. He was not Minor's biological father but he continued to care for him and visit him. Father had left the home in October 2019, due to Mother not taking her psychotropic medication and she threatened to falsely accuse him of domestic violence. Father paid for Mother's phone,

5

car, and car insurance. Father was unsure why he was not contacted when Minor was initially detained. Father had no concerns about J.G. Father was renting a bedroom in Rialto. Father wanted to continue to be part of Minor's life.

Minor viewed Father as his father. Father had provided provisions and support for Minor since his birth. He was listed on Minor's birth certificate. In September 2015, in the prior family maintenance proceeding involving Minor, Father was named the presumed father. M.H. was the biological father but his whereabouts were unknown.

B.    JURISDICTION/DISPOSITION REPORT

The jurisdiction/disposition report was filed on August 12, 2020. The Department recommended that the section 300 allegations (b)(1) through (b)(4), and (b)(8) through (9); subdivision (g)(10) and (g)(11); and subdivision (j)(12) and (j)(13) allegations be found true. The remaining allegations should be dismissed. It was recommended that Minor be removed from Parents' care. It was also recommended that reunification services be denied for Parents pursuant to section 361.5, subdivision (b)(10). Minor remained in Aunt's custody.

Aunt reported that Mother has "schizophrenic episodes," which led to the removal of siblings from her care. Mother had reported to Aunt that she was not currently getting her injections of medication. Father also reported that it was true that Mother suffered from schizophrenia. When she did not take her medication, she had hallucinations and made false accusations against others. O.G. reported that Mother had appeared not to be on her medication for the prior four months. Mother admitted she had been diagnosed with schizophrenia but that she did not "feel like one." She had not taken her medication

6

injections for four or five months but claimed to be taking another drug in pill form. Parents were married and they were still married despite Mother filing for divorce. Mother claimed to not know the reasons for the prior cases involving siblings.

The alleged sexual assault of Minor by J.G. in the bathroom was still being investigated. Despite Mother wanting Minor to be out of the home, she did not make other arrangements for his care. She left the home and did not bring Minor with her. Minor had a forensic medical exam. The results were normal. Minor had limited verbal skills and did not disclose any sexual abuse. Aunt reported that she did not believe that J.G. would sexually abuse Minor. Mother had told Aunt she was lying about the accusation. Father also did not believe the allegations.

The Department received an anonymous phone call reporting that J.G. had sexually abused his own children; the reporter was concerned he was abusing Minor. The caller expressed concern he was molesting A.M., who also lived in the home. Mother reported that since the medical exam did not show any abuse, she now believed that J.G. had not sexually abused Minor. The Department was going to conduct a forensic interview with Minor. M.H. had not been found. Mother reported that he had died but it could not be confirmed by the Department.

Father was interviewed. He left Minor in the care of MGP as he believed they would provide appropriate care. He currently rented a bedroom in a house and could not have Minor stay with him. He insisted he brought food and diapers to Minor. Father did not believe there was no food in the home; the refrigerators were always full. He had offered to pay for an exterminator. Father also stated that there was only one prior

7

incident where the police were called for domestic violence. He had grabbed Mother's arm to intervene in an argument between Mother and O.G. He had a stroke in February 2020 and initially had not been able to move his fingers and toes. He had participated in physical therapy and had regained movement. Father had been diagnosed with diabetes and high blood pressure. He was prescribed medication but could not afford it. He had a job at a restaurant where he worked 13 hours a week.

The Department provided the police report from the first encounter with the family. It explained the condition of the home—that was filled with trash, roaches and dirty clothes. There was feces on the walls. The kitchen was filled with rotting food and dead roaches. An unannounced home visit on August 5, 2020, showed the house had been partially cleaned up. There was food in one of the refrigerators but roaches were still seen in the home.

Mother reported Father did not provide child support for Minor because Minor was not his real son. Father had maintained regular contact with the Department and wanted to participate in the proceedings. The Department also recognized that in the prior case involving Minor in 2015, Father had been named the presumed father. Further, Parents "successfully completed the Court-ordered services and showed benefit" so the case was dismissed. Mother wanted MGP to have custody of Minor; she did not want Aunt to have custody. Father was willing to participate in any services required to return Minor to his care. Father wanted his own apartment in order to have room for Minor.

The Department concluded that Minor should be removed from Parents.  Mother had severe and unaddressed mental health concerns, and Father had known of the concerns but left Minor in her care.  The prognosis for reunification was "poor."  The current case was the fifth case with the Department since 2002 brought due to Mother's mental health and Father's failure to protect.  Mother was living in a shelter and could not adequately care for Minor.  Father was willing to offer care but would need assistance from MGP.  The Department was concerned about Minor's developmental delays, which included not being potty trained, even though he was five years old, and that Mother, Father and MGP had not addressed the issue.  The Department did not believe that Parents would benefit from reunification services.

C.      PRIOR DEPENDENCY OF SIBLINGS AND MINOR

Attached to the jurisdiction/disposition report were the reports from the prior case involving Minor in 2015.  The Department also attached portions of the record from the siblings' dependency case.[3]

---

[3] On February 22, 2021, this court granted Father's motion to augment the record with the Los Angeles Superior Court records of the siblings' dependency commenced in 2007, which was ultimately transferred to San Bernardino County Superior Court.  In addition, we granted the motion to augment to include the family maintenance case involving Minor commenced in 2015.  Upon further review of the case, not all of the augmented record was before the juvenile court at the jurisdiction/disposition hearing.  The juvenile court did not take judicial notice of the entire file.  As such, on appeal we will only rely on those records that were before the juvenile court, which are also included with the original clerk's transcript.  Appellate review is limited to those records that were before the juvenile court.

The detention report for siblings stated that Mother had been found roaming the streets with siblings on April 11, 2007. She had been diagnosed with schizophrenia and had a long history of not taking her medication. Siblings were not dressed appropriately, were dirty and hungry. Mother and siblings were taken in by MGP. Another family member reported that Parents had been involved in a domestic violence dispute. Father hit Mother in the presence of siblings and Mother had kicked him out of their apartment two weeks prior.

Mother moved back in with Father on April 17, 2007. Father reported to the Department that siblings were being cared for. A social worker attempted to visit siblings where Parents were living, but Mother denied access to the apartment. Police were called in order to gain access to the apartment. The home was dirty and the only furniture was one mattress on the floor. Mother had sold all the furniture claiming she was moving back in with MGP. Siblings were detained in foster care due to the report of domestic violence and Mother's mental health, which put the siblings at risk of harm. K.M. reported observing Father hit Mother. K.M. and J.M. were both very dirty and smelled bad when they were detained.

The detention and jurisdiction/disposition reports provided that the Department had been involved with Parents in 2002, 2005 and 2006 due to Mother's mental illness. The section 300 petition alleged that Parents engaged in domestic violence in the siblings' presence; Mother had physically abused K.M. and J.M.; Mother suffered from untreated mental illness; and Father had failed to protect siblings despite being aware of Mother's mental illness.

At the jurisdiction/disposition hearing for siblings, the juvenile court granted reunification services to Father, which included parenting classes and individual counseling to address domestic violence. As of the time of the jurisdiction/disposition hearing, siblings were in foster care. Father had been interviewed on May 16, 2007. Father accused Mother of lying about the domestic violence. He had never seen Mother physically abuse siblings. Father denied that Mother's mental health was a danger to siblings. Mother refused to be interviewed.

A status review report prepared on July 21, 2008, for siblings stated that they had been placed with Aunt because the foster mother no longer wanted to care for siblings due to Mother's harassment. Mother had not participated in individual counseling but had completed parenting and domestic violence classes. She was still suffering from delusional episodes. Father was enrolled in counseling but still minimized Mother's mental health issues. It was recommended that Father's reunification services be terminated. Another status review report dated February 18, 2010, provided that siblings had been moved to the home of MGP on October 7, 2009. Siblings were all doing well in school and thriving in the home. MGP were interested in being appointed siblings' legal guardians.

On March 19, 2010, the case was transferred to San Bernardino County Superior Court, case No. J231899. Parents were granted overnight visits with siblings in the home of MGP. Another status review report was filed on August 26, 2010. It was recommended that MGP be named legal guardians of siblings and that the dependency case be dismissed. According to the report, Parents filed section 388 petitions on March

11

10, 2009, and had their reunification services reinstated.  Father had been attending family therapy.  Siblings, MGP and Parents all attended family parenting classes together.  The siblings' dependency was dismissed and they were placed in legal guardianship with MGP.

As for the prior dependency for Minor, according to the detention report dated August 14, 2015, Minor came to the attention of the Department at his birth based on the siblings' case.  Minor was not detained and remained in the custody of Parents.  Mother had given birth to Minor in July 2015; he was premature.  Parents lived with siblings at the home belonging to MGP.  Mother insisted she had her mental health issues under control.  The Department expressed concern because of the prior failure to complete reunification services that were provided for siblings' dependency case, and Mother's mental health.  The section 300, subdivision (b), petition alleged, in part, that Mother had a history of mental health illness that negatively impacted her ability to parent Minor.

The jurisdiction/disposition report for Minor recommended that Minor remain in Parents' custody.  They were all living in MGP' house.  The Department recommended that the allegations in the section 300, subdivision (b), petition be found true.  Father was informed he was not the biological father of Minor but he still wanted to provide for the care of Minor.  The Department noted that since the prior dependency with siblings, Parents were not employed and they had lived with MGP for seven years.  Father was assisting Mother with managing her mental illness by ensuring she took her medicine.  At the jurisdiction/disposition hearing, the juvenile court found the allegations in the section

12

300 petition true and ordered family maintenance with Minor staying in the custody of Parents.

In the status review report, the Department recommended that the dependency case be dismissed. The Department reported that Parents had participated in services including individual and couples counseling for domestic violence. Mother attended individual counseling for her mental illness. Father was also participating in individual therapy. Parents had completed a parenting class. The Department reported that Parents were individually benefitting from services offered to them. The Department noted that the previous history with the Department did not appear to be an issue as Parents had engaged in services. The matter was dismissed on August 13, 2015.

D. ADDITIONAL REPORTS

Additional information was provided to the court on August 12, 2020, in the current dependency case. On August 4, 2020, MGP applied for an order to be appointed temporary guardians of Minor. On August 12, 2020, MGP were able to obtain the order for legal guardianship for Minor in the San Bernardino County Superior Court. Aunt was informed not to release Minor to their custody because juvenile court orders superseded such an order. The superior court order was suspended.

Additional information was provided to the court on August 27, 2020. A family team meeting was conducted on August 20, 2020. Father and Aunt were present. Mother was not present. Aunt was not willing to be a concurrent planning home for Minor. A forensic interview with Minor regarding the alleged sexual assault was attempted but was unsuccessful. It was terminated due to his inability to focus or respond. Father had a

13

visit with Minor, which went well. On August 25, 2020, Mother went to a sheriff's station and reported she wanted to drop the charges against J.G. She then stated that she was being pressured by MGP. Mother did not think it was safe for Minor to return to the care of MGP.

On August 27, 2020, MGP made a request to be named the de facto parents of Minor. On August 31, 2020, the Department requested a continuance in order to obtain records from siblings' case from Los Angeles County. The continuance was granted.

Further information was provided to the juvenile court on September 30, 2020. Mother was interviewed and wanted Minor placed in an adoptive home. She was unable to care for him. She stated Father and MGP could not provide adequate care. Father consistently visited Minor. Aunt was only able to care for Minor until she "has to return to work." It was not recommended that a section 366.26 hearing be set because there was no adult available to take legal guardianship or adopt Minor.

The Department requested an additional continuance in order to obtain records from Los Angeles County on siblings. The request was granted.

Another additional information report was filed by the Department on November 5, 2020. The Department opposed the de facto parent request filed by MGP based on the condition of their home during the initial inquiry and the sexual abuse allegations against J.G. Mother reported she was still unable to care for Minor and planned to move to Mexico. Mother also stated that Aunt was neglecting Minor. The Department continued to inquire with relatives who may be willing to care for Minor.

14

On November 9, 2020, the Department provided minute orders from the Los Angeles case involving siblings. On July 30, 2007, siblings were declared dependents of the court pursuant to section 300, subdivision (b). Parents were granted reunification services. On September 23, 2008, the Los Angeles juvenile court terminated the reunification services for Parents for siblings because they had not completed their case plans. On May 18, 2009, the court granted a section 388 petition reinstating Mother's and Father's reunification services. On April 16, 2010, the court granted legal guardianship of siblings to MGP.

E.   JURISDICTION/DISPOSITION HEARING

The jurisdiction/disposition hearing was conducted on November 10, 2020. The Department moved to dismiss the (b)(5), (b)(6), (b)(7), (g)(11), (j)(14) and (j)(15) allegations, which was granted by the juvenile court. The remaining allegations, in the first amended petition were found true. The juvenile court denied the de facto parent request. Minor was to remain out of custody of parents with Aunt until a permanent home could be found. Father was named the presumed father.

Parents did not present any evidence. Father's counsel asked that Father be granted reunification services. Father was a participating in a parenting class and had finished his counseling. He would participate in any services the juvenile court ordered so he could reunite with Minor. The Department countered that since reunification services were terminated for siblings, Father had not made subsequent reasonable efforts.

15

The juvenile court ordered that no reunification services would be granted to Father pursuant to section 361.5, subdivision (b)(10). The juvenile court ruled, "[C]onsidering the duration, extent, and context of the parent's efforts, that reasonable efforts have not been made to ameliorate the problem that led to the termination of services for the half-siblings. [¶] The Court will find it's not in the best interest of [Minor] to offer services to the parents." A section 366.26 hearing was not set as there was no adult willing to accept legal guardianship or adoption. Minor was removed from the custody of Parents, and no reunification services were granted. Minor remained in Aunt's custody.

## DISCUSSION

Father contends the juvenile court erred by denying him reunification services pursuant to section 361.5, subdivision (b)(10).[4] Further, even if the provisions of section 361.5, subdivision (b)(10), are supported by the evidence, Father met his burden of showing it was in Minor's best interests to grant reunification services.

"As a general rule, when a child is removed from parental custody under the dependency laws, the juvenile court is required to provide reunification services to 'the child and the child's mother and statutorily presumed father.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120.) "[S]ection 361.5, subdivision (b), exempts

---

[4] Father complains he was not named the presumed father until the jurisdiction/disposition hearing despite being named the presumed father of Minor in 2015. This has no bearing on the issue on appeal. Father was named the presumed father and was denied reunification services not because the Department found he was an "alleged father" but rather because of the prior case involving siblings.

from reunification services 'those parents who are unlikely to benefit' from such services or for whom reunification efforts are likely to be 'fruitless.' " (*Id.* at pp. 1120-1121.)

"When the juvenile court concludes reunification efforts should not be provided, it ' " 'fast-tracks' " ' the dependent minor to permanency planning so that permanent out-of-home placement can be arranged. [Citation.] The statutory sections authorizing denial of reunification services are commonly referred to as ' "bypass" ' provisions. [Citation.] One exception may be found where 'the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 . . . and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian.' [Citation.] 'To apply section 361.5, subdivision (b)(10), therefore, the juvenile court must find both that (1) the parent previously failed to reunify with a *sibling [or half sibling]* and (2) the parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling [or half sibling].' " (*In re I.A.* (2019) 40 Cal.App.5th 19, 23-24.)

"Once it has been determined one of the situations enumerated in section 361.5, subdivision (b), applies, ' " 'the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources.' " ' " (*In re I.A.*, *supra*, 40 Cal.App.5th at p. 24.)

There is no question the first prong of the bypass provision of subdivision (b)(10), applies insofar as Father's reunification services were terminated because he failed to reunify with siblings. The only question is whether substantial evidence supports the second prong, e.g. the evidence supports the juvenile court's finding Father failed to make reasonable efforts to treat the problems that required the siblings' removal.

"[N]ot every 'effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the duration, extent and context of the parent's efforts, as well as any other factors relating to the quality and quantity of those efforts, when evaluating the effort for reasonableness. And while the degree of progress is not the focus of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the reasonableness of the effort made.' " (*Jennifer S. v. Superior Court*, *supra*, 15 Cal.App.5th at p. 1121.) "We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence." (*In re T.G.* (2015) 242 Cal.App.4th 976, 987.) "[W]e 'review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings.' " (*Ibid*.)

Here, there was substantial evidence to support the juvenile court's finding that Father had not made reasonable efforts to treat the problems that required siblings' removal. Siblings were removed from Father's care due to domestic violence, Mother's untreated schizophrenia, and Father not being able to protect them from Mother's mental

18

illness. Father had not been present when siblings were found roaming the streets with Mother. When siblings were detained, they were dirty and in an apartment with no furniture. Father had left siblings in Mother's care aware of her schizophrenia, which posed a risk to siblings.

In the instant amended petition, it was alleged against Father that he knew or reasonably should have known that Mother had untreated schizophrenia, which put Minor at risk of physical and emotional harm. Here, Father had made some progress in protecting Minor from Mother's mental illness since siblings were removed. There is no dispute Parents were able to live together for a time with Minor and the siblings without incident. The Department found Parents had benefitted from services in the family maintenance case involving Minor. The record supports that this may have been due to Mother consistently taking her medication and attending counseling.

However, at the time of the current dependency, Minor was living in squalor. He was developmentally delayed, and Mother was incapable of taking care of him. In fact, Mother wanted Minor to be adopted because she did not believe she, Father, or MGP could properly care for Minor. Mother stopped taking her medication. Father again was incapable of protecting Minor. Rather than stay to care for Minor, Father moved out leaving him in the care of Mother, who was clearly having a mental breakdown. Father acknowledged that when Mother did not take her medication, she made false accusations and had hallucinations. Despite this knowledge, he left Minor in her care and in the care of MGP. Father made no additional effort to provide for Minor to keep him from Mother. Instead, he rented a room for himself without the ability to have Minor live with

19

him.  The evidence supported that Father continued to have trouble protecting Minor from Mother.

Father contends there was no clear and convincing evidence before the juvenile court to support the second prong of section 361.5, subdivision (b)(10).  He relies on findings made by the Department and juvenile court in 2016, in the family maintenance case involving Minor, that Father had successfully addressed the issues that caused the 2007 failure to reunify.  The Department, in the family maintenance case, found that Father had successfully completed court-ordered services and benefitted from the services.  However, Father has provided no case law or authority that such a determination required that the juvenile court grant him reunification services in the current dependency because this was conclusive evidence he had made reasonable efforts.  Here, the juvenile court could conclude despite this finding in an earlier case, that Father had failed to reunify with siblings, and that the same issues were present over 10 years later.

Minor became the subject of the instant dependency because, over 10 years since the siblings were involved with the Department, Mother's mental illness put Minor at risk of harm and Father had failed to protect Minor.  This was the exact same issue that brought the family to the attention of the Department in 2007 for siblings.  While Parents had some success after siblings were placed with MGP as their legal guardians, substantial evidence supported that Father still had trouble helping manage Mother's mental illness and trying to protect Minor.  Father left Minor when Mother had stopped taking her medication because he was worried she would falsely accuse him of domestic

20

violence. This was the same behavior he exhibited when siblings first came to the attention of the Department in 2007. Substantial evidence supports the juvenile court's finding that Father had not made reasonable efforts to treat the problems that required the siblings' removal.

Father contends that if this court concludes that substantial evidence supports both prongs of section 361.5, subdivision (b)(10), the juvenile court erred by finding it was not in Minor's best interest to grant him reunification services.

Pursuant to section 361.5, once the juvenile court determines that a parent is described by subdivision (b)(10) of that statute, it shall not order reunification services for that parent "unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2); see also *In re I.A.*, *supra*, 40 Cal.App.5th at p. 24 ["if the juvenile court finds a provision of section 361.5, subdivision (b), applies, the court 'shall not order reunification for [the] parent . . . unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child' "].)

"To determine whether reunification is in the child's best interest, the court considers the parent's current efforts, fitness, and history; the seriousness of the problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity." (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1116.) However, "[t]he concept of a child's best interest 'is an elusive guideline that belies rigid definition. Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult.' " (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66.)

21

"The burden is on the parent to . . . show that reunification would serve the best interests of the child." (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.)

Father did not meet his burden of showing that reunification was in Minor's best interests. Father presented no evidence to support that it was in Minor's best interest to reunify with him. The evidence did show that Father abandoned Minor when Mother stopped taking her medication. While Father claimed that he thought Minor would be taken care of by MGP, they were not responsible for Minor. Father left Minor in a home with deplorable conditions. Further, he did not provide evidence of how he would care for Minor should he reunify. Father lived in a home where he could not have Minor stay with him. Father wanted MGP to help him care for Minor, but J.G. was still under investigation for sexual abuse of Minor, and the home with the deplorable conditions was owned by MGP.

Father had consistently visited with Minor but there was no evidence of a particular bond. Minor had developmental delays and was not potty trained although he was five years old. Father did not express concern about the delays. Father insisted he had provided provisions for Minor throughout Minor's life, even when not living with Minor, but Mother had stated Father refused to provide child support because he was not Minor's biological father. While Father appeared to have a relationship with Minor, Father did not meet his burden of establishing that it was in Minor's best interest to reunify with Father. The juvenile court properly determined that reunification services should not be provided to Father.

## DISPOSITION

The juvenile court's November 10, 2020, disposition order denying reunification services to Father is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.