Filed 7/2/24  In re E.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re E.M., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E082706 |
| Plaintiff and Respondent, | (Super.Ct.No. J297939) |
| v. | OPINION |
| C.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Tracy M. De Soto, by appointment of the Court of Appeal, for Defendant and Appellant, C.M.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

## I. INTRODUCTION

C.M. (Mother) appeals from a dispositional order denying her reunification services with her infant child, E.M., under the "bypass" provisions set forth in Welfare and Institutions Code[1] section 361.5.[2] The juvenile court denied reunifications services after finding that (1) Mother was not receiving reunification services for E.M.'s half siblings after they were removed as the result of either severe sexual or physical abuse (§ 361.5, subd. (b)(7)); and (2) Mother had previously failed to reunify with E.M.'s half siblings and had not subsequently made reasonable efforts to address the problems resulting in the half siblings prior removal (§ 361.5, subd. (b)(10).)

On appeal, Mother argues that the order denying her reunification services should be reversed because: (1) the juvenile court's findings that section 361.5, subdivisions (b)(7) and (b)(10) applied are not supported by substantial evidence; (2) the juvenile court applied an incorrect legal standard by purportedly requiring Mother to disprove the application of section 361.5, subdivision (b)(10); and (3) the best interests of E.M. justified granting reunification services notwithstanding the application of any bypass provision. We conclude that the record does not support Mother's contention that the juvenile court applied an incorrect legal standard to bypass reunification services and that Mother has forfeited any claim that the juvenile court should have provided reunification services notwithstanding the application of a bypass provision. We also

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] "The statutory exceptions to providing reunification services under § 361.5 have been referred to as reunification 'bypass' provisions." (*Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 845-846.)

conclude that substantial evidence supports the juvenile court's bypass findings under section 361.5, subdivision (b)(10) and affirm the dispositional order on this basis.

## II. BACKGROUND

### A. *Facts and Dependency Petition*

C.M. (Mother) is the biological mother and R.M. (Father)[3] is the presumed father of E.M. In July 2023, Mother and Father were involved in an altercation that resulted in the arrest of both parents. As a result of this incident, E.M. was transported by San Bernardino County Sheriff's deputies to the hospital for a physical evaluation; a referral was made to San Bernardino County Children and Family Services (CFS); and a petition was filed on behalf of E.M. pursuant to section 300 et seq. With respect to Mother, the petition alleged she was unable to provide for or protect E.M. as the result of substance abuse, domestic violence, and untreated mental health issues; was unable to provide for E.M. as the result of her incarceration; and that there was a substantial risk of harm to E.M. as the result of Mother's past neglect or abuse of E.M.'s half siblings.

### B. *Jurisdictional and Dispositional Hearing*

On November 20, 2023, the juvenile court held a contested jurisdictional and dispositional hearing on E.M.'s petition. At the time of hearing, CFS requested that the juvenile court consider its detention report, a jurisdictional and dispositional report, and an additional information report dated November 2023, and the juvenile court received these reports into evidence without objection.

---

[3] Father is not a party to this appeal.

1. Detention Report

According to the detention report, E.M. was brought to the hospital by San Bernardino County Sheriff's deputies for a physical evaluation on July 23, 2023. Mother and Father had each been arrested following an incident involving a physical altercation between the two; an attempt by Mother to drive an automobile while simultaneously holding E.M.; and E.M. being "dropped" by Mother.

A social worker interviewed Mother regarding the incident while Mother was still incarcerated. According to Mother, on the night of the incident she accompanied Father to his place of work at a casino and consumed a significant amount of alcohol while Father was working. Father drove the two home and, after picking up E.M. from a babysitter, Mother and Father began to argue. When they arrived at their apartment, Mother took E.M. from a car seat located in the back of the vehicle and moved to the driver's seat of the vehicle with E.M. in her arms. She then started the vehicle's ignition in an attempt to repark the vehicle. Father reacted by jumping into the front passenger seat of the vehicle and attempting to place the vehicle back into park. In response, Mother punched Father and Father called 911. During this interview, Mother denied that Father ever struck, pushed or otherwise harmed her or E.M. and further expressed that she was unsure why Father had been arrested since she believed Father was only trying to stop her from driving while intoxicated.

When the social worker asked Mother about prior dependency proceedings involving two other children, Mother reported that she had been trying to escape a domestic violence situation and was ultimately unable to reunify with her other children

4

because she did not have a place to live. When asked about her alcohol consumption, Mother reported that she did not drink often, but acknowledged that things often went wrong when she did drink.

A social worker also interviewed Father at his home. Father confirmed that on the night of the incident, Mother had become intoxicated while Father was working, Father drove Mother to pick up E.M. from a babysitter, and he and Mother began to argue. However, when they arrived home, Mother stated she no longer wished to live with Father, carried E.M. into the driver's seat of their vehicle, and started the vehicle's ignition. In response, Father got into the front passenger seat of the vehicle, told Mother she could not drive because she was intoxicated. Mother repeatedly attempted to drive the vehicle as Father repeatedly attempted to switch the vehicle's gear back to park. During this time, Father was on the phone with a 911 operator and Mother hit Father several times. Father reported that he was initially arrested along with Mother because sheriff's deputies were uncertain whether Father had willingly permitted Mother to drive while intoxicated. He expressed that he no longer had any desire to reunite with Mother, intended to obtain a restraining order against Mother, and that he desired to regain custody of E.M.

Father also provided the social worker with six videos taken from his cellphone during the incident. The videos depicted (1) Mother intoxicated while in the driver's seat of a vehicle, simultaneously holding E.M. and attempting to drive; (2) Father attempting to forcibly place the vehicle into park and pleading with Mother to stop; and (3) Mother holding E.M. while simultaneously hitting, punching and biting Father.

5

2. <u>Jurisdictional and Dispositional Report</u>

According to the jurisdictional and dispositional report, two of E.M.'s half siblings had previously been removed from Mother's custody in September 2019 as the result of Mother's substance abuse and domestic violence. The juvenile court terminated Mother's reunification services in that proceeding in February 2021; and the case was closed after the half siblings were able to reunify with their father in November 2022.

A social worker conducted a second interview with Mother in August 2023. During this interview, Mother denied having a substance abuse problem and claimed that she rarely consumes alcohol; but also acknowledged that she consumes alcohol when she feels overwhelmed and that consumption of alcohol impairs her judgment. Mother admitted that on the night of the incident for which she was arrested, she was intoxicated; attempted to drive a vehicle while holding E.M. in her arms; and physically struck Father while still holding E.M. in her arms; and at some point, E.M. fell from her arms onto the ground. Mother further admitted that her relationship with Father involved domestic violence; the incident for which she was arrested was not an isolated incident of domestic violence; and that she likely has unresolved mental health issues requiring treatment. When asked about the prior dependency case involving E.M.'s half siblings, Mother claimed that she had previously successfully completed all her reunification services, but was unable to reunify due to her inability to obtain adequate housing.

A social worker also conducted a second interview with Father. In this interview, Father denied committing any acts of domestic violence against Mother and accused Mother of being the abuser in their relationship. Father stated he had already engaged in

6

therapy and been taking parenting classes in preparation for seeking custody of E.M. from Mother. Father stated he had obtained a restraining order against Mother; stated that he does not intend to continue any relationship with Mother; and further stated that his only interest was to regain custody of E.M.

     3.  Additional Information Report

According to the additional information report, Mother had been regularly participating in a substance abuse program for approximately two months; had tested negative on all drug screens during this program; and had obtained generally positive feedback from the program counselor regarding her participation thus far. Social workers had requested a progress report regarding Mother's involvement in a domestic violence program and individual therapy, but had not yet received a response from the service provider.

The report also summarized an exchange between Mother and a social worker that occurred approximately one week prior to the scheduled hearing date.[4] During this exchange, Mother was "hostile"; expressed the view that social workers were not accurately reporting her progress in services; and complained that she was unable to work full time as a result of the predisposition services and visitation schedule set by CFS. She further complained that CFS failed to provide her with gas cards to reimburse her for the cost of attending visits.

---

     [4] The documented exchange occurred on November 14, 2023, and the contested jurisdictional and dispositional hearing was conducted on November 20, 2023.

When the social worker attempted to address Mother's complaints, Mother repeatedly spoke over the social worker and would not allow the social worker to respond. Mother expressed the view that it was the social worker's job to make things "easier" for Mother and that the social workers assigned to this case were not doing their jobs. Mother expressed the same sentiment regarding the social workers in her previous dependency case, claiming that her failure to reunify with E.M.'s half siblings resulted from a social worker's failure to secure adequate housing for Mother. When the social worker attempted to explain that reunification required Mother to be proactive, Mother began to angrily curse at the social worker. The social worker advised that she would discontinue the call if Mother could not discuss matters respectfully and, in response, Mother stated she no longer wished to speak with the social worker and abruptly ended the call.

Finally, CFS provided documents from the dependency proceeding involving E.M.'s half siblings. The documents included the petition filed on behalf of E.M.'s half siblings alleging Mother's inability to provide or protect as the result of Mother's serious substance abuse, untreated mental health issues, and permitting a boyfriend to perpetrate acts of physical abuse on the children. The documents also included copies of minute orders showing that: (1) the half siblings were removed from Mother's custody after the juvenile court found true the allegations of the petition; (2) the juvenile court terminated reunification services after finding that Mother "failed to participate regularly and make substantive progress in a court-ordered treatment plan."

4. Mother's Testimony

Mother testified at the hearing. Mother acknowledged that she was involved in a prior dependency proceeding and explained that the reason for the dependency was because she "was in a domestic violence situation." Mother stated that she recently completed two domestic violence courses in April and July 2023; had been participating in individual therapy since July 2023; and had been participating in a substance abuse program for approximately three months. Mother acknowledged that her substance abuse program involved several additional months of engagement before completion, but stated that she was committed to completing the program.

5. Findings and Disposition

Following the presentation of evidence, Mother argued that the bypass provision of section 361.5, subdivision (b)(10) did not apply because she had made reasonable efforts to treat the issues that led to removal of E.M.'s half siblings in the prior dependency action.[5] Mother did not address CFS's recommendation that reunification services be bypassed pursuant to section 361.5, subdivision (b)(7); did not request the trial court grant reunification services despite the application of any bypass provision; and did not request any findings on these issues.

The juvenile court found true the allegations of the petition as to Mother; ordered E.M. removed from parental custody; and denied reunification services to Mother upon a

---

[5] Specifically, Mother's counsel argued that the "issue is whether ultimately [Mother] has made reasonable efforts to treat the issues that brought her before the Court in Riverside County."

9

finding that the bypass provisions of section 361.5, subdivision (b)(7) and (b)(10) applied. Mother appeals from this dispositional order.

## III. DISCUSSION

*A. General Legal Principles and Standard of Review*

Generally, "[t]he juvenile court has broad discretion in crafting a disposition pursuant to a child's best interest" (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179), and a reviewing court "cannot reverse the juvenile court's determination, reflected in the dispositional order, of what would best serve the child's interest, absent an abuse of discretion." (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 64-65; *In re A.E.* (2019) 38 Cal.App.5th 1124, 1140-1141 (*A.E.*) [juvenile court's decisions regarding provisions of reunification services in dispositional order are generally subject to review for abuse of discretion].) However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; *In re Miguel R.* (2024) 100 Cal.App.5th 152, 165.)

With respect to the denial of reunification services at the dispositional stage, the juvenile court's discretion is statutorily limited. Under section 361.5, subdivision (a), "[r]eunification services must be provided to the mother and statutorily presumed father of children who have been removed from their parents' custody, unless a statutory exception applies. [citations.]" (*In re A.E., supra*, 38 Cal.App.5th at p. 1141; *In re T.R.*

10

(2023) 87 Cal.App.5th 1140, 1148 (*T.R.*); § 361.5, subd. (a).) The enumerated statutory exceptions include circumstances in which (1) a sibling or half sibling has previously been removed from the parent's custody as the result of severe sexual or physical abuse and the parent is not receiving reunification services with respect to the sibling or half sibling (§ 361.5, subd. (b)(7)); and (2) a sibling or half sibling has been removed from parental custody in a prior dependency proceeding, a court has ordered termination of reunification services as a result of the parent's failure to reunify in that prior proceeding, and the parent has not subsequently made reasonable efforts to address the problems that led to removal of the sibling or half sibling (§ 361.5, subd. (b)(10).)

If the juvenile court determines that the bypass provisions set forth in section 361.5, subdivision (b)(7) or (b)(10) applies, it is statutorily prohibited from ordering reunification services unless it also makes a countervailing finding that reunification is in the best interest of the child. (§ 361.5, subd. (c)(2).) The relevant social services department bears the initial burden of proving the threshold issue of whether a bypass provision applies by clear and convincing evidence, while the parent bears the burden to prove, by clear and convincing evidence, that a bypass provision should be overridden because reunification would be in the best interest of the dependent child. (*In re T.R.*, *supra*, 87 Cal.App.5th at p. 1148; *In re Jayden M*. (2023) 93 Cal.App.5th 1261, 1272-1273 (*Jayden M*.).)

We proceed to consider each of Mother's contentions on appeal. However, as we explain, we find no abuse of discretion warranting reversal of the juvenile court's dispositional order denying Mother reunification services.

11

*B. The Record Does Not Show the Juvenile Court Applied an Incorrect Legal Standard*

Initially, we address Mother's argument that the juvenile court applied the wrong legal standard in determining the application of section 361.5, subdivision (b)(10). Specifically, Mother argues that the evidentiary burden on this issue was improperly placed upon her because she was required to show she had made progress since the termination of reunification services as to E.M.'s half siblings. We conclude that this argument is unsupported by the record.

We agree with Mother that under the plain language of section 361.5, subdivision (b)(10), a showing that the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the . . . half sibling of that child" is a prerequisite to application of the statutory bypass provision (§ 361.5, subd. (a)) and, as a result, CFS bears the burden to present evidence in support of such a finding. (*In re T.R.*, *supra*, 87 Cal.App.5th at p. 1148 ["the department bears the burden of proving the threshold issue of whether a bypass provision applies"].) Thus, if the juvenile court had placed the evidentiary burden upon Mother to show she had made reasonable efforts in order to disprove the application of section 361.5, subdivision (b)(10), doing so would have been an abuse of discretion. (*L.C. v. Superior Court* (2024) 98 Cal.App.5th 1021, 1034-1035 [the juvenile court "abuses its discretion when it applies the wrong legal standard"].) However, "[t]he general rule is that on a silent record the 'trial court is presumed to have been aware of and followed the applicable law' when exercising its discretion." (*Ruelas v. Superior Court* (2015) 235 Cal.App.4th 374, 383; *In re Julian R.* (2009) 47 Cal.4th 487, 498.)

12

Here, Mother has not identified anything in the record to suggest the juvenile court misunderstood the law regarding the parties' respective burdens at the dispositional hearing. Instead, Mother cites to the *arguments* made by CFS and E.M.'s counsel at the time of hearing. However, merely showing that an incorrect legal argument was advanced by counsel at the time of hearing is not dispositive of the inquiry. It is the juvenile court and not the relevant child welfare agency that "maintains ultimate control over the delivery of services." (*In re Z.C.* (2009) 178 Cal.App.4th 1271, 1287.) On a silent record, we presume the juvenile court was aware of and followed the applicable law and Mother has not met her burden on appeal to show the juvenile court abused its discretion on this point.

## C. Substantial Evidence Supports the Juvenile Court's Order

We turn next to Mother's contention that the juvenile court's findings in support of bypassing reunification services were not supported by substantial evidence. Generally, "a trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*In re Nicole H*. (2016) 244 Cal.App.4th 1150, 1154.) And in reviewing this aspect of the juvenile court's order, "we ask whether there is sufficient evidence in the record that is reasonable, credible and of solid value—when viewed in the light most favorable to the juvenile court's determination—for a reasonable trier of fact to conclude that the Department carried its burden by clear and convincing evidence." (*In re Jayden M*., *supra*, 93 Cal.App.5th at p. 1273.) However, we conclude that Mother's challenge to the juvenile court's section 361.5, subdivision (b)(7) findings have been forfeited and further conclude that, even in the absence of forfeiture, reversal is

13

not required because the juvenile court's section 361.5, subdivision (b)(10) finding is supported by substantial evidence.

1. Forfeiture

"In dependency proceedings, as elsewhere, a litigant forfeits an appellate argument by failing to raise it before the trial court." (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1292-1293; *In re S.B.* (2004) 32 Cal.4th 1287, 1293.) The forfeiture rule has been specifically applied where a parent fails to object to a recommendation that reunification services be denied based upon a statutory bypass provision. (*D.T. v. Superior Court* (2015) 241 Cal.App.4th 1017, 1034 [Because "[n]o party objected to the court's use of section 361.5, subdivision (b)(10)" to bypass reunification services, "any objection based on the court's use of the wrong statute has been forfeited"]; *In re T.G.* (2015) 242 Cal.App.4th 976, 984 (*T.G.*) [mother's failure to object to application of bypass provision at the time of disposition forfeited the issue on appeal].)

Here, the jurisdictional and dispositional report filed by CFS expressly recommended that the juvenile court deny Mother reunification services based upon the bypass provisions in both section 361.5, subdivision (b)(7) and (b)(10). Despite this, Mother did not object to the recommendation with respect to section 361.5, subdivision (b)(7) and did not address this point at the time of the dispositional hearing. Even after the juvenile court stated its findings on the record, Mother did not raise the issue, despite requesting modification of other orders. Given this record, we conclude that Mother has forfeited her claim that the juvenile court's findings pursuant to section 361.5, subdivision (b)(7) are not supported by substantial evidence.

14

2. Merits

Even in the absence of forfeiture, we would conclude that reversal of the juvenile court's dispositional order is not warranted because its finding that the bypass provision in section 361.5, subdivision (b)(10) is supported by substantial evidence in the record. Under this bypass provision, the juvenile court is not required to order reunification services if a sibling or half sibling of the dependent child has been removed from parental custody, a court has ordered termination of reunification services as a result of the parent's failure to reunify with the sibling or half sibling, and the parent has not subsequently made reasonable efforts to address the problems that led to removal of the sibling or half sibling. (§ 361.5, subd. (b)(10).)

Here, CFS submitted copies of the dependency petition and minute orders related to the dependency proceeding involving E.M.'s half siblings. Mother admitted in her interviews with social workers that two of E.M.'s half siblings had been removed from her custody and she was unable to reunify; and Mother did not dispute any of these facts at the time of the hearing in this case. Thus, the evidence was clearly sufficient to show that two of E.M.'s half siblings had previously been removed from Mother's custody in a prior dependency proceeding and that Mother's reunification services were terminated in that proceeding.

With respect to whether Mother has made subsequent reasonable efforts to address the problems that prevented her from reunifying with E.M.'s half siblings, the evidence in this case showed that E.M.'s half siblings were removed from Mother's custody as the result of both substance abuse and domestic violence; and that Mother's reunification

15

services were terminated with respect to E.M.'s half siblings after the juvenile court found that Mother "failed to participate regularly and make substantive progress in a court-ordered treatment plan". However, even after the incident in which Mother was arrested for attempting to drive a vehicle while intoxicated and holding E.M. in her arms, Mother repeatedly denied to social workers that she struggled with substance abuse, and instead repeatedly expressed her view that her inability to reunify in the prior dependency proceeding was solely the result of her failure to obtain adequate housing. Further, while the record shows that Mother voluntarily engaged in domestic violence classes and individual therapy in April and July 2023[6], she did not participate in any programs attempting to address the issue of substance abuse until more than two years after reunification services were terminated in the prior proceeding and after E.M. was detained in this proceeding, resulting in only three months of services related to this issue by the time of the dispositional hearing.

In light of Mother's failure to acknowledge substance abuse as one of the primary reasons for the removal of E.M.'s half siblings from her custody; Mother's repeated denial that she struggles with substance abuse even during the course of the present dependency proceeding; and Mother's belated attempt to participate in a substance abuse treatment program, the juvenile court could reasonably conclude that Mother had not made reasonable efforts to address the problems that previously led to the removal of E.M.'s half siblings from her custody. (*Jennifer S. v. Superior Court* (2017) 15

---

[6] We observe that even then, these efforts occurred more than two years after termination of reunification services as to E.M.'s half siblings.

16

Cal.App.5th 1113, 1121-1122 (*Jennifer S.*) [juvenile court may conclude that a parent has not made sufficiently reasonable efforts to address the problem where no efforts were made until after the birth and detention of the parent's most recent child].) Thus, we conclude that substantial evidence supports the juvenile court's finding that the bypass provision in section 361.5, subdivision (b)(10) applied.

Further, "only one valid ground is necessary to support a juvenile court's decision to bypass a parent for reunification services." (*In re Madison S*. (2017) 15 Cal.App.5th 308, 324; *Jennifer S*., *supra*, 15 Cal.App.5th at p. 1121 ["only one valid ground is necessary to uphold the juvenile court's bypass decision"]; *In re T.G*., *supra*, 242 Cal.App.4th at p. 986 [same].) Thus, even in the absence of forfeiture regarding Mother's claim that the juvenile court's section 361.5, subdivision (b)(7) finding is unsupported by substantial evidence, it is unnecessary to reach the merits of Mother's contention regarding this finding[7] and we would affirm the juvenile court's order denying reunification services to Mother.

D.  *Mother Has Forfeited Her Claim that Reunification Services Should Have Been Granted in the Best Interests of E.M.*

Finally, Mother contends that even if substantial evidence in the record supports a finding that a bypass provision applies in this case, the juvenile court should have granted

___

[7]  We acknowledge that on appeal, CFS concedes that section 361.5, subdivision (b)(7) is inapplicable. Ultimately, we need not reach the issue because this concession does not impact the disposition in this case.

17

reunification services to her because doing so would be in the best interests of E.M. We conclude that this argument has been forfeited for failure to raise the issue below.

Under section 361.5, subdivision (c)(2), the juvenile court may order reunification services despite the application of a bypass provision if the juvenile court finds, by clear and convincing evidence, that reunification is in the best interest of the child. (§ 361.5, subd. (c)(2).) However, the parent bears the burden of showing the best interest of the child triggering the application of this provision. (*In re T.R.*, *supra*, 87 Cal.App.5th at p. 1148; *In re Jayden M*., *supra*, 93 Cal.App.5th at pp. 1272-1273.) At least once Court of Appeal has observed that "[t]his subdivision becomes relevant *only if* . . . the juvenile court contemplates exercising its discretion to order services" and the juvenile court is not required to make any findings related to this subdivision if it does not consider provision of reunification services. (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 913, fn. 3.)

Here, the record shows that the only argument advanced by Mother at the time of the contested dispositional hearing was that the bypass provision of section 361.5, subdivision (b)(10) did not apply. Mother did not request that the juvenile court consider granting reunification services despite the application of a bypass provision; did not argue that the evidence supported a finding that reunification services would be in the best interest of E.M.; and did not request the juvenile court make any findings under section 361.5, subdivision (c)(2). Consequently, the juvenile court never reached the issue and made no findings under this subdivision. Given this record, we must conclude that Mother's argument has been forfeited on appeal.

18

Nor does this case present a circumstance in which we should exercise our discretion to reach the merits of the issue. The determination of whether reunification services should be offered despite the application of a statutory bypass provision is a matter within the juvenile court's discretion based upon weighing numerous factors. (See *In re Jayden M*., *supra*, 93 Cal.App.5th at pp. 1272-1273.) Review of this aspect of a juvenile order requires a reviewing court to evaluate whether the juvenile court's factual findings are supported by substantial evidence (*See In re A.E.*, *supra*, 38 Cal.App.5th at pp. 1140-1145) and whether the juvenile court's weighing of those factors in reaching its ultimate determination was arbitrary and capricious. (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1166-1167 [juvenile court may order reunification services despite competing evidence on the issue].) This court cannot conduct such an analysis where the juvenile court was never asked to make any factual findings related to the matter and never asked to exercise its discretion in the first instance. Thus, we decline to reach the merits of this argument and instead apply the general rule of forfeiture to this claim on appeal.

## IV.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                            J.

We concur:

McKINSTER _____
          Acting P. J.

RAPHAEL _____
              J.

20