Filed 8/27/24  In re M.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.C.,<br><br>Defendant and Appellant. | F087332<br><br>(Super. Ct. No. JD143873-00)<br><br>**OPINION** |

### THE COURT*

APPEAL from orders of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Vincent W. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Alexandria M. Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Hill, P. J., Franson, J. and De Santos, J.

**INTRODUCTION**

C.C. (mother) appeals from an order terminating jurisdiction over her daughter, M.C., pursuant to Welfare and Institutions Code section 364,[1] granting sole legal and physical custody to John C. (father), and ordering supervised visitation for mother. Mother also challenges the court's failure to place M.C. with mother and argues she was not provided reasonable reunification services, denied visitation with M.C., and deprived of due process by the court's placement order and termination order that failed to provide mother with reasonable visitation.

We agree with Kern County Department of Human Services (the department) that mother's challenge to the court's removal and custody orders, as well as her arguments regarding the department's provision of reasonable reunification services or visitation prior to the six-month review hearing, should have been raised by appeal after the dispositional judgment and other orders. Mother also forfeited any argument that she was not provided reasonable reunification services after the six-month review hearing and as to the exit visitation order by not raising those objections during the section 364 hearing.

We affirm.

**PROCEDURAL BACKGROUND AND FACTS**

**I.      *Family background, referral, and section 300 petition.***

Father and mother (collectively, parents) were married and had M.C. in 2010. After their divorce in 2016, the family court awarded sole custody of M.C. to father and ordered visitation for mother.[2]

On June 11, 2022, law enforcement responded to father and M.C.'s residence (the trailer) to assist mother in enforcing visitation. Father was belligerent and smelled of alcohol. Law enforcement determined the trailer was uninhabitable as it was infested

---

[1]      All further statutory references are to the Welfare and Institutions Code.

[2]      References to proceedings in the family court or "the family court case" refer to the ongoing custody issues between parents relating to M.C.'s custody.

with insects, contained spoiled food, smelled of urine, had no functional refrigerator or toilet, had very little food, and because M.C.'s bed was surrounded by cups of urine. Father was arrested for disobeying a court order and child cruelty.

A social services supervisor followed up on the referral from law enforcement with father while M.C. was still visiting mother in mother's county of residence. Father was advised that M.C. could not return until the trailer was habitable. On June 24, 2022, when mother had failed to return M.C., father retrieved M.C. from mother's residence after enlisting the assistance of law enforcement and a friend.

On September 20, 2022, a deputy employed by the Kern County Sheriff's Office, responded to the trailer after father was transported to a hospital due to severe intoxication. The trailer was messy, was cluttered with trash and food, and had broken glass scattered throughout. M.C. stated that father was an alcoholic, she did not feel safe with him, and she did not want to accompany him to the hospital. The deputy took M.C. into protective custody because father was too intoxicated to transfer custody to a family member or friend.

On September 22, 2022, the department filed a juvenile dependency petition for then 12-year-old M.C., alleging that she fell within the juvenile court's jurisdiction under section 300, subdivision (b)(1) because father failed to provide her with adequate food, clothing, or shelter (§ 300, subd. (b)(1)(C)) and was unable to provide regular care for her due to his substance abuse (§ 300, subd. (b)(1)(D)).

## II.     *September 26, 2022 initial and detention hearing (§ 300).*

### A.     Social Study

M.C. advised the social services worker (SSW) that she lived with father her whole life and mother left when M.C. was three years old. M.C. preferred to remain at the children's center or in foster care rather than live with mother because of mother's prior drug use, living conditions, complaints made against father, and "sexual things" in her house and on her computer. M.C. stated that father drank alcohol every other day,

which caused him to become angry or to pass out, and she did not feel safe when father drank because he yelled at her and called her names.

SSW advised mother that M.C. did not want to live with mother. Mother had only visited M.C. once in June 2021 and once in June 2022. Mother explained father did not honor the court-ordered visitation and told M.C. negative things mother. Mother previously abused Vicodin but had not used drugs since 2016.[3] Mother later contacted SSW and advised that she spoke with M.C. who stated that she now wanted to be released to mother's custody rather than stay in foster care. When asked by SSW, however, M.C. denied having said that to mother and emphasized that M.C. did not want to reside with mother.

Father admitted that he was an alcoholic and expressed his willingness to enter a rehabilitation facility and agreed to drug testing. Father did not want M.C. released to mother because mother had once tried to flee with M.C. and mother's visits were suspended until an upcoming hearing in family court. According to father, mother used heroin and methamphetamine and left M.C. with father when M.C. was three years old, but mother recently filed for full custody.

SSW concluded that the M.C.'s health and safety could only be protected by detention, and she could not be returned to parents unless they obtained counseling and other services.

**B.    Hearing**

At the September 26, 2022 hearing, father objected to mother's request that M.C. be released to her custody. The court found M.C. came within section 300 and ordered M.C. detained after finding no reasonable means were available to protect her from substantial danger to her physical or emotional health without removing her from parents'

---

[3]    Mother's criminal history reflects drug charges in 2008, a theft conviction in 2009, two convictions in 2013 wherein defendant received deferred judgments, and, in 2016, she successfully completed drug court after possessing a controlled substance.

physical custody. The court also ordered twice weekly, two-hour supervised visits for mother and father.

## III. *November 9, 2022 Jurisdictional and dispositional hearing.*

### A. Social Studies

In addition to information documented in the September 26, 2022 social study, the November 9, 2022 dispositional and jurisdictional social studies described that while M.C. participated in visits with father, she repeatedly advised SSW that she did not wish to speak to mother or participate in any virtual visits. SSW told mother that M.C. was adamant in her refusal to visit with mother and the department had to respect that decision. SSW would continue to make efforts to discuss mother's visitation with M.C., but M.C. had the right to decline.

While mother requested that M.C. be placed in her care, mother had not been involved in M.C.'s life, M.C. did not view mother as her caregiver, and M.C. specifically stated that she did not wish to visit or reside with mother. SSW concluded that M.C.'s placement with mother would be detrimental to her safety and well-being but recommended family reunification. Parents would be provided with two-hour supervised visits twice weekly with M.C.

Mother's case plan required her to abstain from using controlled substances, submit to random drug testing at least once a month for six months, complete parent training within six months to reduce the likelihood of abuse and neglect, and maintain housekeeping standards for six months to provide a clean and safe environment for M.C.

Father's plan required him to successfully complete substance abuse treatment within six months, abstain from using alcohol and controlled substances, submit to random alcohol and drug testing at least once a month for six months, complete parent training within six months, and maintain housekeeping standards for six months.

5.

**B.     Hearing**

Father executed a waiver of rights and submitted upon the jurisdictional and dispositional social studies.  The court found the allegations of the petition to be true and that M.C. was a person described by section 300, subdivision (b).  Mother requested placement of M.C. and testified that she lost custody of M.C. in 2016 but wished for M.C. to reside with her, although she had not applied for placement.  Mother had been sober since 2016 and regularly drug tested with her own physician for "the Court" (a reference to the family court case).  Mother also testified that M.C. did not wish to reside with her because father lied to M.C. about mother.  Mother visited with M.C. twice in the two years prior to the November 9, 2022 hearing.

The court adopted the department's recommendations.  Because mother and M.C. had no meaningful contact in recent years and M.C. was adamant that she did not wish to see mother, the court determined that M.C. should receive therapy and the department should find creative ways to encourage M.C. to visit with mother.  The court suggested ways in which this could be accomplished, and all parties agreed to the court's suggestions.

The court denied mother's request for placement and made M.C. a dependent. (§§ 300, subd. (b), 360, subd. (d).)  The court ordered reunification services for mother and father and visitation as recommended, set a six-month review hearing for May 9, 2023, set a status hearing regarding mother's visitation progress on January 17, 2023, and advised parents of their right to appeal.

**IV.     *Mother's January 17, 2023 visitation status hearing.***

According to the January 17, 2023 supplemental social study, M.C. refused to visit with mother each week despite SSW's attempts to arrange telephonic visitation.  Mother appeared at the hearing and submitted on the social study[4] but objected to the

---

[4]     Mother again requested that M.C. be placed with mother.  Mother argued that M.C.'s aversion to residing with her did not present a substantial risk to M.C. and should not prevent the

6.

department's lack of efforts to be proactive in encouraging M.C. to visit with mother. The court suggested additional ways the department could bridge the gap between mother and M.C. and instructed the department to consult with M.C.'s therapist to assist by consulting with mother separately as to how to improve mother's relationship with M.C.

## V.     Father's section 388 petition to change custody order.

On April 23, 2023, father filed a section 388 petition to change the court's order and return M.C. to his custody with family maintenance services because father had accomplished his case plan objectives. The court calendared the petition to be heard at the six-month review hearing.

## VI.     May 9, 2023 six-month review and modification hearing.

### A.     Social Study

The May 9, 2023 social study described SSW's efforts to assist mother with family reunification services. SSW telephonically discussed the case plan with mother each month December 2022 through March 2023. Mother agreed to drug test with her own doctor pending arrangements through the department, and SSW reminded mother to forward course completion documentation and drugs test results. SSW notified mother in February 2023 that department drug testing had been set up for her on a call-in system.

Mother provided SSW with negative results from drug tests in February, July, September, and November 2022. On April 21, 2023, SSW communicated to mother the drug testing instructions for that day, however, mother failed to forward any drug test results since November 2022 as promised. Regarding mother's visitation, M.C. refused to meet with mother despite SSW's efforts since January 2023. SSW described attempts to encourage M.C. to visit with mother and urged M.C. not to rely on any else's opinion when deciding whether to have a relationship, but M.C. repeatedly responded that she did

court from placing M.C. with her. The court advised that the hearing was limited to a discussion regarding visitation and changing M.C.'s placement would require mother to file a section 388 petition.

not wish to visit with mother. M.C.'s therapist advised that M.C.'s opinion of mother was independent of father and while M.C. discussed mother in therapy, M.C. was not ready to start joint counseling with mother.

SSW reported that father had positive visits with M.C. and completed all objectives of the case plan. Mother completed her classes but had not provided drug test results since November 2022 nor participated in joint counseling and visitation with M.C. due to M.C.'s refusal to do so. SSW recommended M.C. be placed with father who would receive family maintenance services and that reunification services continue to be provided to mother.

**B. Hearing**

On May 9, 2023, mother's counsel requested a continuance to permit mother to retain a new attorney and asked for mother to have in-person visits with M.C. The court denied the request for continuance, finding no good cause and that M.C. would be detrimentally impacted by the delay.

The court granted father's petition based upon his substantial progress and mother's moderate progress in alleviating reasons for M.C.'s removal. Because return of M.C. to mother's physical custody would create a substantial risk of detriment to M.C.'s physical and emotional wellbeing, the court made the necessary findings and followed the department's recommendations. The court found clear and convincing evidence that the department complied with the case plan by making reasonable efforts and providing reasonable services to return M.C. to a safe home. The court calendared a section 364 status hearing for November 9, 2023.

## VII. *November 9, 2023 section 364 and 12-month review hearing.*

SSW's November 9, 2023 social study stated that she texted mother to provide drug testing information in July 2023, but despite regular attempts to contact mother during the review period, mother neither contacted SSW nor submitted any required drug test results. During the prior review period, mother had completed the required courses,

but visits and joint counseling with M.C. still had not occurred because M.C. declined contact with mother.

SSW concluded that father had accomplished all objectives of his case plan, noting positive interactions between father and M.C. during the review period and father's completion of a substance abuse program, related courses, and drug tests. Because mother failed to participate in the case plan or have any contact with the department regarding it, SSW recommended terminating reunification services as to mother, ordering one-hour monthly visits for mother and M.C., and terminating jurisdiction.

M.C.'s court appointed special advocate (CASA) reported favorably on M.C.'s health, wellbeing, and education. CASA visited M.C. and father twice a month since July 2023 and observed their respectful and loving relationship, that the trailer was clean and free from hazards, and M.C. showed no signs of abuse or neglect. M.C. was thriving with father, and CASA concluded the placement was appropriate and should continue. M.C. still refused to visit or establish a relationship with mother and stated that if visits occurred, she would not engage with mother nor did she wish to reunite with her. CASA joined the department's recommendation.

Mother did not appear for the hearing. Mother's counsel submitted on the November 9, 2023 social study and requested that the closing order contain the visitation order and schedule. The court adopted the recommendations of the department and CASA, after finding that mother's progress had been minimal and she failed to participate regularly and make progress in treatment programs. The court further found that the department had made reasonable efforts to provide services and terminated mother's reunification services. The court awarded sole legal and physical custody to father, ordered one-hour monthly visits for M.C. and mother, and terminated jurisdiction.

## DISCUSSION

**I.**   ***Mother cannot challenge the court's orders prior to the November 9, 2023 section 364 and 12-month review hearing because she failed to timely appeal from them.***

### A.   Applicable Law

Section 395, subdivision (a)(1) provides in relevant part:  "A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment .…"  " 'A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order.'  [Citation.]  An appeal from the most recent order in a dependency matter may not challenge earlier orders for which the time for filing an appeal has passed.  [Citation.]  'Permitting a parent to raise issues going to the validity of a final earlier appealable order would directly undermine dominant concerns of finality and reasonable expedition .…' "  (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018.)

### B.   Analysis

#### 1)   *Mother failed to appeal from the court's November 9, 2022 dispositional hearing and cannot challenge the court's decision not to place M.C. with her now.*

At the jurisdictional stage of a dependency proceeding, the juvenile court determines whether the child is a minor described by section 300.  (§§ 355, subd. (a), 356.)  If the court finds a basis to assume jurisdiction, it subsequently hears evidence on the issue of the proper disposition for the child.  (§ 358, subd. (a); see *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.)  The court has several options for disposition under section 360.  If the court removes a child from the custody of a parent with whom the child resided when the section 300 petition was initiated (§ 361, subd. (c)) and does not order a plan of guardianship (§ 360, subd. (a)), it determines the child's placement under section 361.2.  " '[S]ection 361.2 governs the child's temporary placement with the

10.

noncustodial parent and the provision of reunification services to the parents, and also permits the court to grant legal and physical custody of the child to the noncustodial parent.' " (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1503.)

Under section 361.2, subdivision (a), if the noncustodial parent was not residing with the child and desires to assume custody, the court is required to place the child with that parent unless it finds that such placement would be detrimental to the child's safety, protection or physical or emotional well-being. If the court makes a finding that such placement would be detrimental, that court may then adjudicate the child a dependent of the court under section 360, subdivision (d). (See *In re I.I.* (2019) 42 Cal.App.5th 971, 976 [a juvenile court, after taking jurisdiction, has discretion to then declare the child a dependent of the court].)

In this case, the dispositional hearing occurred on November 9, 2022. At that hearing, the court determined that M.C. should be removed from father's physical custody. Mother requested placement as the noncustodial parent and testified regarding the circumstances under which she lost custody of M.C. in 2016, her prior drug use, her relationship with M.C., and addressed M.C.'s opposition to residing with her. At the conclusion of the testimony, the court denied mother's request for placement and declared M.C. a dependent of the court.

Mother now argues that the court abused its discretion in not placing M.C. in her physical custody and its decision deprived her of due process.[5] "[T]he dispositional order is the adjudication of dependency and is the first appealable order in the dependency process." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 196.) Mother failed to appeal within 60 days of the court's disposition order. (See Cal. Rules of Court, rule 8.406(a)(1).) Therefore, mother's challenge to the court's placement decision is untimely and may not be raised in this appeal.

---

[5]     Mother does not identify whether this claim is based on the California or United States Constitution.

**2)** ***Mother failed to appeal from the court's May 9, 2023 six-month review hearing and cannot now challenge the court's finding that the department provided reasonable reunification services or visitation.***

"The juvenile court must hold review hearings for dependent children no less often than once every six months.  [Citation.]  If a child has been removed from [their] parents and remains out of parental custody, the review hearings are held under sections 366 and 366.21.  During the reunification period, except in certain specified circumstances, the parents will be offered services, and at each hearing the court determines whether reasonable services have been offered or provided.  (§§ 361.5, subd. (a), 366.21, subds. (e), (f).)  At the six-month or the 12-month review hearing, the court returns the child to the parents' custody unless it finds return would cause a substantial risk of detriment.  (§ 366.21, subds. (e), (f).)"  (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 649–650.)

Mother challenges the court's finding that the department provided reasonable reunification services.  At the dispositional hearing, the court ordered the department to provide reunification services to mother, which included random drug testing and parent training within the following six months.  At the May 9, 2023 six-month review hearing, the court found that the department had made reasonable efforts to provide reasonable reunification services.[6]

If mother disagreed with the department's position that such services had been provided, mother should have objected at the hearing and appealed if she still disagreed with the court's finding.  The appellate time limitations discussed above apply to

---

[6]     Mother argues that the department failed to provide any services to her, including drug testing or parenting classes.  However, the social study for the May 9, 2023 six-month review hearing provided that mother agreed to drug testing with her doctor until testing through the department was arranged, department drug testing was set up in February 2023, and mother completed her parenting classes online.  Additionally, the social study for the November 9, 2023 section 364 hearing provided that SSW communicated drug testing information to mother in July 2023.

12.

postdispositional orders which are directly appealable as orders after judgment. (See § 395; Cal. Rules of Court, rule 8.406 (a)(1); *Sara M. v. Superior Court, supra*, 36 Cal.4th at p. 1018.) Accordingly, mother forfeited her right to challenge the findings and order made at the May 9, 2023 six-month review hearing. We address mother's challenge to the court's reasonable reunification services finding made at the November 9, 2023 section 364 hearing below.

Mother also argues that the department failed to provide visitation and the court failed to ensure visitation with M.C. M.C.'s refusal to visit with mother was addressed by the court at the January 17, 2023 status hearing and the May 9, 2023 six-month review hearing. Mother's argument regarding the department's efforts to accommodate visitation should have been raised by appeal after the May 9, 2023 order and cannot be challenged now.

## II. Mother's challenges to the court's findings after the November 9, 2023 section 364 and 12-month review hearing are forfeited by her failure to object.

### A. Reasonable Reunification Services

Mother's argument that the record does not support the court's finding that the department made reasonable efforts to provide her reasonable reunification services and visitation fails for two reasons. First, the department is correct that mother failed to raise the issue of reasonable services or visitation at the November 9, 2023 section 364 hearing. Mother, therefore, forfeited any challenge as to whether the department provided her reasonable services or made reasonable efforts regarding visitation. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." "Dependency matters are not exempt from this rule."], superseded by statute on another ground as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)

Second, the court did not err in finding that substantial evidence supported its finding that the department provided reasonable reunification services and visitation to

mother. "Substantial evidence is that which is reasonable, credible and of solid value." (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1238, disapproved on other grounds in *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, fn. 8.)

SSW's November 9, 2023 social study detailed that SSW communicated drug testing information to mother in July 2023, but SSW never heard back. Additionally, SSW made at least five other attempts to communicate with mother, but mother never responded to SSW. In light of mother's apparent abandonment of the case plan and failure to communicate with the department during the six-month period, substantial evidence supports the court's conclusion that the department made reasonable efforts to provide reasonable reunification services to mother.

SSW's social study for the November 9, 2023 hearing provided that M.C. did not want to visit with mother, no visits had been attempted, mother had not been in contact with the department, and the department concluded that it had made reasonable efforts to provide reasonable services to mother. Mother failed to object to the social study nor did she raise any issue concerning the department's efforts in proving services at the hearing. "When a child refuses visitation, it is the parent's burden to request a specific type of enforcement, or a specific change to the visitation order. Absent a request, it is not the court's burden to sua sponte come up with a solution to the intractable problem of a child's steadfast refusal to visit a parent." (*In re Sofia M.* (2018) 24 Cal.App.5th 1038, 1046.) Furthermore, M.C.'s failure to be convinced to visit with mother is not alone a basis for finding the department's efforts were not reasonable. (See *id*. at p. 1047.) In light of mother's failure to maintain any contact with the department in the six-month period prior to the November 9, 2023 hearing, we cannot conclude that the department was responsible for mother's lack of visitation.

B.    **Visitation Exit Order**

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. [Citations.] Such

14.

orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122–1123; see §§ 364, subd. (c), 362.4 [upon termination of jurisdiction over a child, the court on its own motion, may issue an order determining custody of, or visitation with, the child].) We review an order terminating dependency jurisdiction and determining custody for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

The November 9, 2023 social study recommended the court terminate jurisdiction and order one-hour visitation with M.C. each month for mother. At the hearing, mother's counsel submitted on the social study but "ask[ed] that the closing order contain the visitation order and schedule" for mother to visit. Counsel did not oppose the frequency or length of mother's visitation. Therefore, we conclude mother also forfeited this argument by failing to object during the hearing, and we reject it. (See *In re T.G.* (2015) 242 Cal.App.4th 976, 984.)

Further, even if not forfeited, we cannot find the court abused its discretion in reducing mother's visits from two hours twice a week to one hour once a month where mother essentially ceased participating in her case plan and failed to contact the department during the preceding six-month period.[7]

## DISPOSITION

The orders are affirmed.

---

[7] Mother may still seek modification of the visitation schedule in family court. (See § 362.4)